The **BALTIMORE LUGGAGE COMPANY**

v.

**SAMSONITE CORPORATION.**

**Civ. No. PN–86–503.**

United States District Court, D. Maryland.

Dec. 7, 1989.

Christopher W. Nicholson, and Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Md., and A.W. Breiner, Theodore A. Breiner, and Breiner & Breiner, Alexandria, Va., for plaintiff.

David B. Rudow, Paul N. Sameth, and Adelberg, Rudow, Dorf, Hendler & Sameth, Baltimore, Md., and A. Sidney Katz, Patrick G. Burns, and Welsh & Katz, Ltd., Chicago, Ill., for defendant.

Lyn M. Schlitt, James A. Toupin, and George Thompson, for U.S. Intern. Trade Com'n, amicus curiae.

## OPINION

NIEMEYER, District Judge.

This case presents the question whether rulings on trademark issues made by the International Trade Commission ("ITC") under 19 U.S.C. §§ 1332 and 1337 are to be given preclusive effect in this litigation under the doctrine of res judicata or collateral estoppel.

When Baltimore Luggage Company introduced a new line of molded luggage, Samsonite contended that the new line infringed Samsonite's trademark rights. Baltimore Luggage initiated this declaratory judgment action and Samsonite initiated an action before the ITC. With respect to some of the issues that were resolved by the ITC, Samsonite has filed a motion to dismiss and for summary judgment on the ground that the doctrine of res judicata applies. A hearing was held on this motion as well as other pending motions on August 4, 1989. Counsel for the ITC were permitted to argue as amicus curiae. The Court has considered subsequent briefs filed by the parties and by the ITC.

For the reasons that are given in this Opinion, Samsonite's motion for summary judgment will be granted.

## I

### PROCEDURAL HISTORY

Because Samsonite bases its motion for summary judgment in part on the doctrine of res judicata, it is necessary to examine the procedural history in some detail.

Baltimore Luggage introduced a new line of molded luggage named "Starfrost" in the fall of 1985. Samsonite contacted Baltimore Luggage in January 1986 to assert that the Starfrost luggage infringed its common-law trademark rights. It demanded that Baltimore Luggage cease the sale of the luggage, provide Samsonite with an accounting of all sales made, and pay damages.

Baltimore Luggage promptly initiated the instant action by filing its complaint on February 13, 1986. In Count I of the three-count complaint plaintiff seeks a declaratory judgment that

Samsonite has no valid trademark rights in any of the items alleged by Samsonite to be infringed; that Baltimore's Starfrost luggage does not infringe any valid trademark of Samsonite; that Baltimore is not unfairly competing with Samsonite under either the statutory or common law through the marketing and sale of the Starfrost luggage; and that Baltimore has not and is not passing off its Starfrost product as a Samsonite product.

In Count II, Baltimore Luggage alleges that Samsonite has attempted to monopolize the molded luggage market and to restrain trade in that market through the unlawful extension of expired patents and through the assertion of trademark rights in unprotectable functional items in violation of antitrust law. Count III is for common law unfair competition.

In its answer, filed on June 23, 1986, Samsonite included four counterclaims for

(1) patent infringement in which it alleges that Baltimore Luggage infringed Samsonite's U.S. Patent No. 4,280,247, (2) violation of the Lanham Act, 15 U.S.C. § 1125(a), based on a false designation of source or origin, (3) common law trademark infringement and unfair competition, and (4) violation of the Maryland Consumer Protection Act, Com.Law Art., § 13–101 *et seq.*, Md. Code (1983). Samsonite later added a fifth counterclaim for "passing off" under the Lanham Act, 15 U.S.C. § 1125(a).

While this action was pending Samsonite filed a complaint against Baltimore Luggage and others with the ITC on December 30, 1986. The complaint alleged that the importation of the molded luggage into the United States and its sale here by Baltimore Luggage and the other respondents was a violation of 19 U.S.C. § 1337(a), which then provided:

> Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section.

Baltimore Luggage raised 21 affirmative defenses in response to the complaint, including the defenses that Samsonite had committed antitrust violations and that Samsonite had unclean hands.

The ITC instituted an investigation into this matter on January 29, 1987, styled *In the Matter of Certain Hard-sided Molded Luggage Cases*, No. 337–TA–262. After a nine-day hearing, the Administrative Law Judge ("ALJ") issued an initial determination and found that Samsonite had no trademark rights in molded luggage because the design was *de jure* functional, non-distinctive, and had not acquired secondary meaning. The ALJ also found that

Samsonite had failed to prove that the importation and sale of the luggage in the United States had the tendency to destroy or substantially injure Samsonite.

The ALJ also made determinations about the defenses raised by Baltimore Luggage. He determined that the evidence in the record did not support the defenses of unclean hands and/or antitrust violation. He stated:

> While the administrative law judge has found the mark in issue de jure functional and to lack secondary meaning, he finds that the record does not support a finding of bad faith, inequitable and/or other conduct on the part of complainant [Samsonite] to warrant a holding of trademark misuse, unclean hands and/or antitrust violation.

Samsonite petitioned the ITC for review of the ALJ's initial determination, and on December 21, 1987, the ITC declined review. Samsonite appealed the decision of the ITC to the Court of Appeals for the Federal Circuit pursuant to 19 U.S.C. § 1337(c) and 19 C.F.R. § 210.71. Baltimore Luggage was permitted to intervene in the appeal but it did not raise or challenge the ALJ's adverse determinations as to its affirmative defenses. The Federal Circuit affirmed the ITC decision on the ground that no tendency to injure an industry had been shown. The court also vacated as moot that part of the ITC decision which related to the unfair competition issues.

Three motions are now pending before the Court. Samsonite has moved for summary judgment on Counts II (antitrust violations) and III (unfair competition) of Baltimore Luggage's complaint, arguing that these actions are barred by the ITC's decision under the doctrine of res judicata. Samsonite has also moved to dismiss Count I (for declaratory judgment) on the grounds that there is no actual case or controversy. Finally, Baltimore Luggage has moved that the Court terminate a stay of proceedings which was entered in this case on December 5, 1988.

## II

### RES JUDICATA

Samsonite's res judicata defense to Counts II (antitrust) and III (unfair competition) is based on the findings by the ALJ that Baltimore Luggage had failed to prove antitrust violations, trademark misuse, or unclean hands.

■ The doctrine of res judicata serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The doctrine is applicable when there is "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." *Nash County Board of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir.), *cert. denied*, 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981). The fact that the earlier judgment in this case came from an administrative agency rather than from a court of law does not end the inquiry. The Supreme Court has confirmed that courts may give res judicata effect to judgments of administrative agencies:

> Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

*United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966).

■ Baltimore Luggage had ample opportunity to litigate its affirmative defenses before the ALJ. As a respondent in the investigation, it was a party, *see* 19 CFR § 210.4, and as such was entitled to utilize all the discovery procedures provided by 19 CFR §§ 210.30—210.37. It also had the opportunity to cross-examine Samsonite's witnesses. Baltimore Luggage maintains, however, that it took no discovery and presented little evidence on its antitrust and unfair competition affirmative defenses before the ITC—arguing, in effect, that it did not intend to litigate these issues before the ITC. It contends that it decided not to present evidence on these claims because (1) the very claims were pending before this Court in the instant action, (2) the ITC lacked authority to grant Baltimore Luggage affirmative relief, and (3) it believed that it would be successful before the ITC on other grounds. The fact that Baltimore Luggage made a *strategic* decision not to litigate these affirmative defenses, however, does not mean that it lacked the opportunity to litigate.

Unless Baltimore Luggage can demonstrate that it did not have a full and fair opportunity to adjudicate an issue before the ITC, the issues determined there cannot be relitigated in any subsequent proceeding. *Union Mfg. Co., Inc. v. Han Baek Trading Co.*, 763 F.2d 42 (2d Cir. 1985); *In re Convertible Rowing Exerciser Patent Litigation*, 721 F.Supp. 596 (D.Del. 1989); *cf. Blonder–Tongue v. University Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971).

## III

### JURISDICTION OF THE ITC

The ITC has filed an *amicus curiae* brief in this case urging a position in support of Baltimore Luggage that rulings of the ITC not be given preclusive effect. Both the ITC and Baltimore Luggage argue that 19 U.S.C. § 1337 was not intended to displace, but to supplement, other provisions of law and that Congress intended that dispositions by the ITC should not have a res judicata or collateral estoppel effect in cases before the federal courts. In response to these contentions Samsonite relies principally on the decision in *Union Mfg. Co., Inc. v. Han Baek Trading Co.*, 763 F.2d 42 (2d Cir.1985), which held that in trademark matters a finding by the ITC following a due process hearing should be given preclusive effect.

The ITC's investigation of Samsonite's complaint and issuance of a determination was pursuant to § 337 of the Tariff Act of 1930 as amended, 19 U.S.C. § 1337. This section proscribes unfair methods of competition in the importation of articles and provides for the elimination of the unfair competition through cease and desist orders and orders directing the exclusion from the United States of the articles in question. The substance of § 1337 originated in the Tariff Act of 1922, ch. 356, Title III, § 316, 42 Stat. 943 (1922). As noted by the Court of Appeals for the Federal Circuit, § 337 was intended from its inception to supplement existing law, which was viewed as inadequate to protect U.S. industry from unfair practices in the import trade. *Lannom Mfg. Co. v. U.S. Int'l Trade Comm'n,* 799 F.2d 1572, 1577 (Fed.Cir.1986). The court referred to the Twelfth Annual Report of the United States Tariff Commission 21 (1928), wherein the Commission stated:

> Existing law, apart from section 316 [now § 337], is wholly inadequate to protect domestic owners of patents from violation of their patent rights through the importation and sale of infringing articles.... Stoppage of importation of infringing articles through an order of exclusion from entry is the only effectual remedy.

*Id.*

The wording of the statute itself supports the ITC's position that Congress intended § 1337 to supplement, not displace, existing law. Section 1337(a) states, in part that unfair methods of competition and unfair acts are unlawful, "and when found by the Commission to exist shall be dealt with, *in addition to any other provisions of law,* as provided in this section." 19 U.S.C. § 1337(a) (emphasis added).

Although the ITC's contention that Congress intended § 1337 to supplement existing law is well supported, it is also clear that the way in which the provision was intended to supplement existing law was by adding a more effective remedy to those already available. There is no support for the ITC's argument that Congress intended

*adjudications* made during a § 1337 proceeding to be supplemental to adjudications in other proceedings. Congress's intent to provide a supplemental remedy to fight unfair competition in the importation of articles into the United States is not frustrated by giving preclusive effect to determinations made during a § 1337 proceeding.

The ITC's argument that its determinations should not be given preclusive effect relies heavily on language found in the Senate Report accompanying the Trade Act of 1974, which amended § 337, as set forth in S.Rep. No. 1298, 93d Cong., 2d Sess., *reprinted* 1974 U.S.Code Cong. & Admin. News 7186, 7329. The report states:

> The relief provided for violations of section 337 is "in addition to" that granted in "any other provision of law". The criteria of section 337 differ in a number of respects from other statutory provisions for relief against unfair trade practices. For example, in patent-based cases, the Commission considers, for its own purposes under section 337, the status of imports with respect to the claims of U.S. patents. The Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts. Therefore, it seems clear that any disposition of a Commission action by a Federal Court should not have a res judicata or collateral estoppel effect in cases before such courts.

If the last sentence of the quoted paragraph is read out of context, it lends support to the ITC's argument that Congress did not intend § 1337 determinations to have preclusive effect. However, in context the statement refers to patent validity matters as described in the remainder of the paragraph. A statement about the limitations of the effect of ITC decisions in patent matters is made with good reason, a reason noted in the same Senate Report:

> [T]he ultimate issue of the fairness of competition raised by section 337, necessitate[s] that the Commission review the validity and enforceability of patents, for the purposes of section 337.... The Commission is not, of course, empowered

under existing law to set aside a patent as being invalid or to render it unenforceable, and the extent of the Commission's authority under this bill is to take into consideration such defenses and to make findings thereon for the purposes of determining whether section 337 is being violated.

*Id.* The Congress has granted *exclusive* jurisdiction to the district courts to determine patent cases. See 28 U.S.C. § 1338(a). With that jurisdictional limitation therefore the ITC would have no power to enter an order on patent validity that would have preclusive effect. *See In re Convertible Rowing Exerciser Patent Litigation,* 721 F.Supp. 596, 602 (D.Del.1989); *cf. Ashlow Ltd. v. Morgan Construction Co.,* 672 F.2d 371, 375 (4th Cir.1982) (district courts have *exclusive* jurisdiction over the validity of domestic patents). On trademark matters, however, *exclusive* jurisdiction is not granted to the district courts, and the ITC therefore has the power to make such determinations. Therefore, the Court can perceive no good reason why ITC decisions on trademark matters should not be given preclusive effect, as was concluded by the Court in *Union Mfg. Co., Inc. v. Han Baek Trading Co.,* 763 F.2d 42 (2nd Cir.1985).

In *Union Manufacturing* the Second Circuit was presented with a question similar to the one presented by Samsonite's motion—whether a trademark infringement ruling by the ITC was entitled to res judicata effect. Union Manufacturing had filed a complaint with the ITC alleging that Han Baek Trading Co. and other importers had violated § 1337. The ALJ found in favor of Union Manufacturing, but the ITC reversed, finding that the design of Union Manufacturing's product did not constitute a common-law trademark and that Han Baek's similar design did not constitute false designation of origin. Rather than appealing the ITC's decision to the Court of Appeals for the Federal Circuit, Union Manufacturing brought an action in district court, renewing the claims it had presented before the ITC. Han Baek, the defendant in the district court action, argued that Union Manufacturing's claim was barred by the ITC decision under the doctrine of res judicata. The Second Circuit agreed, stating that any other holding "would undermine the legitimacy of the ITC proceeding...." *Id.* at 45. The Court explained:

> Litigants should not be able to circumvent the decisional authority of the ITC and the reviewing authority of the Federal Circuit by filing in a district court what amounts to a collateral attack on the ITC determination.

*Id.*

This Court agrees with the view taken by the Second Circuit. Even though Baltimore Luggage did not initiate the ITC proceeding, a fact that distinguishes these circumstances from *Union Manufacturing,* it had the opportunity to litigate fully its antitrust and unfair competition claims before the ITC. It now wishes to relitigate these claims, arguing that it did not give the litigation before the ITC its full effort for various and perhaps well-considered reasons. This, however, is the very argument that the doctrine of res judicata is intended to prevent. The idea behind claim preclusion is to give finality to the first adjudication of an issue, thereby conserving judicial resources, encouraging reliance on adjudication, and relieving litigants from bearing the cost of multiple suits. *See e.g.,* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4403 (1981). Allowing Baltimore Luggage to relitigate its claims before this Court, after a nine-day hearing before the ITC, would defeat each of the purposes behind this doctrine. Moreover, it would undermine the legitimacy of rulings that Congress authorized the ITC to make.

## IV

### EFFECT OF FEDERAL CIRCUIT'S ORDER

Baltimore Luggage argues that the determination of the ALJ should not be given preclusive effect because the determination was vacated by the Court of Appeals for the Federal Circuit.

After the ALJ made his initial determination, Samsonite petitioned the ITC for re-

view. The ITC declined to review the determination, and Samsonite appealed to the Court of Appeals for the Federal Circuit. Baltimore Luggage intervened in the appeal to urge affirmance of the ITC's decision on the grounds that no injury was caused to Samsonite, but it did not raise the ITC's adverse determinations as to its affirmative defenses. The Federal Circuit affirmed in part and vacated in part the ITC's final determination. The court reasoned:

> Section 337 is not violated unless the Commission finds both a tendency to substantially injure an efficiently and economically operated domestic industry and an unfair method of competition or unfair act. *See* 19 U.S.C. § 1337(a). Here, the Commission concluded that the importation of the luggage does not have the tendency to substantially injure Samsonite.... We conclude that the findings relevant to the injury question are supported by substantial evidence and that the determination of no tendency to substantially injure is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Because the unfair competition issues are "mooted by affirmance on the grounds of no injury, we vacate the portion of the Commission's decision dealing with those issues."

*Samsonite Corporation v. U.S. Int'l Trade Comm'n*, No. 88–1249, slip op. at 1–2 (Fed.Cir. Oct. 13, 1988) [862 F.2d 321 (Table)] (citations omitted).

■ Baltimore Luggage argues that the ITC's final determination with respect to its affirmative defenses of antitrust violations, unfair competition and unclean hands lost any preclusive effect it may otherwise have had when the Federal Circuit vacated that portion of the ITC's decision dealing with the unfair competition issues. It is true that a judgment that has been vacated on appeal is thereby deprived of all preclusive effect, both as to res judicata and collateral estoppel. *See, e.g.*, 1B J. Moore, J.D. Lucas & T. Currier, Moore's Federal Practice ¶ 0.416[2] (2d ed. 1988). The problem with Baltimore Luggage's argument, however, is that the ALJ's decision with respect to the affirmative defenses was not before the Federal Circuit.

■ Title 19 U.S.C. § 1337(c) allows any person "adversely affected" by a final determination of the ITC to appeal to the Federal Circuit. Baltimore Luggage, having been found not to have violated § 1337, was not a "person adversely affected" by the ITC's final determination, and thus did not have standing to appeal. *See e.g., Surface Technology, Inc. v. U.S. Int'l Trade Comm'n*, 780 F.2d 29 (Fed.Cir.1985); *Krupp Int'l v. U.S. Int'l Trade Comm'n*, 626 F.2d 844 (Fed.Cir.1980); *American Tel. & Tel. v. U.S. Int'l Trade Comm'n*, 626 F.2d 841 (Fed.Cir.1980). Although Baltimore Luggage could not have appealed on its own, it was permitted to intervene in Samsonite's appeal on the grounds that its interests would be adversely affected if the ITC's determination that there was no violation of § 1337 were not affirmed on appeal. Baltimore Luggage could have raised before the Federal Circuit the ITC's determination regarding its affirmative defenses. It chose, however, not to do so.

The unfair competition issues which *were* before the Federal Circuit were those determinations unfavorable to Samsonite which Samsonite appealed along with the determination on the issue of injury to Samsonite. Because the Federal Circuit affirmed the ITC's decision on the grounds of no injury to Samsonite, it decided it need not address the unfair competition issues raised by Samsonite on appeal. It vacated the ITC's decision on these issues, rather than leaving the contested, unreviewed findings intact. It had no occasion to vacate similarly the ITC's determinations as to Baltimore Luggage's affirmative defenses; these determinations had not been raised by Baltimore Luggage in the appellate proceedings.

The Federal Circuit cited the case of *Corning Glass Works v. U.S. Int'l Trade Comm'n*, 799 F.2d 1559 (Fed.Cir.1986), in support of its decision to vacate the portion of the ITC's decision dealing with the unfair competition issues. In *Corning*, the Federal Circuit affirmed the determination

of the ITC that the complainant had not demonstrated that the importation of certain optical waveguide fibers would have a tendency to injure a domestic industry and that a violation of § 1337 had therefore not been established. The court then vacated certain patent determinations in the case made by the ITC which had been mooted by the affirmance of the ITC's decision on the grounds of no injury. These patent determinations, however, had been raised on appeal by the intervenor. *See* Non-confidential Brief of Intervenor at 41–79, *Corning Glass Works*, 799 F.2d 1559 (Fed. Cir.1986) (Appeal No. 85–2631). The determinations of the ITC which were vacated were those that were presented, but not reached, on appeal. This case, therefore, does not support the argument that the Federal Circuit will vacate determinations of the ITC that were not before it on appeal.

To the contrary, the Federal Circuit has made it clear that it will not consider issues that were not raised on appeal absent stated extenuating circumstances. As the court said in *Thompson–Hayward Chem. Co. v. Rohm and Haas Co.*, 745 F.2d 27, 32 (Fed.Cir.1984):

> The public interest in an efficient and effective administration of justice requires adherence to the Federal Rules of Civil Procedure, and to the general proposition that conceded or unappealed issues are not reviewable.

This principle was reiterated in *Moleculon Research Corp. v. CBS, Inc.*, 872 F.2d 407, 409 (Fed.Cir.1989), where the court said:

> Because CBS did not raise the reverse doctrine of equivalents issue on appeal, that issue was not before this court in *Moleculon II.* We, accordingly, in upholding the district court's literal infringement finding, *did not and could not, consider that defense.* (Emphasis supplied.)

In summary, the Court concludes that because the determinations adverse to Baltimore Luggage were not before the Federal Circuit on appeal, they were not vacated by that court, and they therefore are capable of having preclusive effect.

## V

### DECLARATORY JUDGMENT COUNT

On its belief that Baltimore Luggage has stopped the importation of the luggage which was the subject of its action before the ITC and that Baltimore Luggage has sold its remaining inventory of that luggage, Samsonite argues that Count I of the complaint, which requests a declaratory judgment that importation by Baltimore Luggage of the Starfrost luggage does not infringe any Samsonite trademark and does not constitute unfair competition, should be dismissed for lack of an actual case or controversy. Samsonite has agreed to dismiss Counts II, III, IV, and V of its counterclaim (Count I having been settled) if this Court (1) grants its motion for summary judgment on Counts II and III of Baltimore Luggage's complaint and (2) dismisses Baltimore Luggage's claim for declaratory judgment.

Baltimore Luggage argues that an actual case or controversy still exists for three reasons: (1) there are counterclaims pending against Baltimore Luggage in the instant action, (2) Samsonite continues to assert that Baltimore Luggage is not free to resume sale of Starfrost luggage or luggage similar thereto, and (3) Baltimore Luggage's request for attorneys fees is still open.

On the first point Baltimore Luggage observed that a case or controversy exists until the counterclaims are actually dismissed. Although Samsonite has not actually dismissed its counterclaim, it has represented its willingness to do so if the Court disposes of the complaint. The Court has already decided to grant Samsonite summary judgment on Counts II and III of the complaint. Therefore, if the Court determines that Baltimore Luggage's request for declaratory relief could be disposed of upon the dismissal of Samsonite's counterclaim, an order could be entered dismissing both Count I of the complaint and Samsonite's counterclaim.

On the second point Baltimore Luggage argues that Samsonite's assertion

that Baltimore Luggage may not in the future import Starfrost luggage or luggage similar thereto creates a controversy which supports Baltimore's request for declaratory relief. There is a two-pronged test for determining whether an actual case or controversy exists in a declaratory judgment action involving trademarks:

First, the declaratory plaintiff must have a real and reasonable apprehension of litigation. Second, the declaratory plaintiff must have engaged in a course of conduct which brought it into adversarial conflict with the declaratory defendant. Both prongs of the test must be satisfied.

*Windsurfing Int'l Inc. v. AMF Inc.*, 828 F.2d 755, 757–58 (Fed.Cir.1987) (citations omitted).

■ Although Baltimore Luggage at one time engaged in conduct which brought it into conflict with Samsonite, it ceased that course of conduct. The controversy between Baltimore Luggage and Samsonite is now only a theoretical one: Baltimore Luggage fears that Samsonite will again assert its trademark rights *if* Baltimore imports Starfrost luggage or similar luggage in the future. Because there is no present conduct producing an actual conflict between Baltimore Luggage and Samsonite, the second prong of the test is not satisfied. Baltimore Luggage's fear that Samsonite will sue in the future is not, in and of itself, sufficient to establish a case or controversy.

On the third point Baltimore Luggage contends that there is an open question whether it is entitled to attorney's fees under 15 U.S.C. § 1117. That section, which governs the recovery of profits, damages and costs in trademark violation cases, provides, in part: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." While the primary purpose of this provision may have been to compensate certain victims of infringement, a secondary purpose was to afford protection to defendants "against unfounded suits brought by trademark owners for harassment and the like." S.Rep. No. 1400, 93d Cong., 2d Sess. 5, 6

*reprinted* in 1974, U.S.Code Cong. & Admin.News, 7132, 7136.

Although the parties have not yet briefed the question whether Baltimore Luggage is entitled to attorney's fees under this provision, there is support for the proposition that a defendant need not obtain a judgment on the merits to qualify as a "prevailing party." *See Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 525–26 (D.C.Cir.1985). Thus a voluntary dismissal by Samsonite of its infringement action could be argued to make Baltimore Luggage a prevailing party.

Because the issue of attorney's fees would remain open in any event, the motion to dismiss Count I of the complaint will be denied.

## VI

### STAY ORDER

On December 5, 1988, at the request of the parties, the Court stayed the trademark and unfair competition claims in this case pending the outcome of Samsonite's appeal of the ITC action. The Federal Circuit has ruled on Samsonite's appeal, rehearing was denied, and no party filed a timely petition for a writ of certiorari. Baltimore Luggage therefore has filed a motion to terminate the stay and requests that an order be entered requiring Samsonite to respond to Baltimore Luggage's pending motion for summary judgment on the trademark issues.

While the Court will lift the stay, a determination of the question whether Baltimore Luggage is entitled to attorneys fees *could* cause dismissal of Count I of the complaint and thereby bring about dismissal of the counterclaims and a conclusion of this litigation. Rather than requiring Samsonite to respond at this time to the motion of Baltimore Luggage for summary judgment, the Court will hold a scheduling conference in connection with further proceedings in this action.

A separate Order will be entered giving effect to this Opinion.

## ORDER

For the reasons given in the Opinion of this date, it is hereby ORDERED this 7th day of December, 1989, by the United States District Court for the District of Maryland, that:

1. The motion of defendant for summary judgment on Counts II and III of plaintiff's complaint is granted and those counts are dismissed.

2. The motion of defendant to dismiss Count I of plaintiff's complaint is denied.

3. The motion of plaintiff to lift the stay entered on December 5, 1988, is granted.

4. The Court will hold a scheduling conference on January 23, 1990, at 4:30 p.m.

5. The Clerk of the Court is directed to mail a copy of the Opinion of the Court and this Order to all counsel of record.