**ZENECA LIMITED, Plaintiff,**

v.

**NOVOPHARM LIMITED, Defendant.**

**Civil Action No. S 95–163.**

United States District Court,
D. Maryland,
Northern Division.

March 14, 1996.

Charles M. Kerr, David B. Irwin, Irwin, Kerr, Green, McDonald & Dexter, Baltimore, MD, James E. Gray, Baltimore, MD, Robert D. Litowitz, Herbert H. Mintz, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, for plaintiff.

James P. Ulwick, Kramon & Graham, Baltimore, MD, Jeffrey S. Ward, John E. Rosenquist, Robert F. Green, Gordon R. Coons, Bruce M. Gagala, Regina M. Anderson, Leydig, Voit & Mayer, Chicago, IL, for defendant.

### MEMORANDUM AND ORDER

SMALKIN, District Judge.

This action is brought by Zeneca Limited [Zeneca] against Novopharm Limited [Novapharm], alleging patent infringement under 35 U.S.C. § 271(e). The case is currently before the Court on motions for partial summary judgment. This Memorandum Opinion only addresses Novopharm's motion for partial summary judgment. The Court will issue a separate opinion with respect to Zeneca's motion for partial summary judgment at a later date. Both motions have been fully briefed, and no oral hearing is necessary. Loc.R. 105.6, D.Md.

### I. Factual and Procedural Background

Zeneca is the patent holder of United States Patent No. 4,536,516 [the '516 patent] for the breast cancer drug tamoxifen, which is manufactured under the brand name Nolvadex. Novopharm is a generic drug manufacturer that filed an Abbreviated New Drug Application with the Food and Drug Administration [FDA] for approval to market a generic version of tamoxifen. Novopharm claims that it has the right to manufacture a generic form of tamoxifen free of patent constraints because the '516 patent is invalid and/or unenforceable.

On January 18, 1995, Zeneca filed this action against Novopharm, alleging statutory patent infringement of the '516 patent. Zeneca seeks both a judgment prohibiting the approval of Novopharm's generic tamoxifen and an injunction enjoining Novopharm from manufacturing its generic tamoxifen until Zeneca's patent expires.

Prior to discovery, Novopharm moved for summary judgment. The basis of the motion was Novopharm's claim that Zeneca should be collaterally estopped from litigating the validity of the '516 patent because the patent had already been held to be invalid and unenforceable in a prior case, *Imperial Chemical Industries PLC v. Barr Laboratories*, 795 F.Supp. 619 (S.D.N.Y) [*Barr*], vacated, *Imperial Chemical Industries, PLC v. Heumann Pharma GmbH & Co.*, 991 F.2d 811 (Fed.Cir.1993). In *Barr*, Imperial Chemical Industries [ICI], Zeneca's former parent and the former holder of the '516 patent, sued Barr Laboratories for alleged patent infringement of the '516 patent. After a full trial on the merits, the District Court for the Southern District of New York held that the '516 patent was invalid and unenforceable because ICI had deliberately and knowingly withheld material information from the United States Patent and Trademark Office. *Barr*, 795 F.Supp. at 624–627.

ICI appealed the decision to the United States Court of Appeals for the Federal Circuit. After the parties had fully briefed the issues, but before argument, ICI and Barr negotiated a settlement in which Barr received $21 million dollars and a non-exclusive distributorship to market tamoxifen. At the time of settlement, "ICI and Barr explicitly advised the Federal Circuit Court that their settlement agreement [was contingent on the Court] ... vacating the district court's judgment so that the unreviewed judgment ... [would] have no precedential, preclusive, or

collateral estoppel effect." (Pl's opp. mem. at 5). The Federal Circuit Court, in accordance with both the parties' settlement agreement and its own practice at the time, vacated the district court's opinion. *Imperial Chemical Industries, PLC*, 991 F.2d at 811. One and a half years after the Federal Circuit vacated the *Barr* judgment, the Supreme Court decided *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, —— U.S. ——, ——, 115 S.Ct. 386, 393, 130 L.Ed.2d 233 (1994), which repudiated the practice of vacating judgments, as part of a settlement while the case was under appellate review. The Supreme Court held that "mootness by reason of settlement does not, [except under exceptional circumstances], justify vacatur of a judgment under review." *Id.* The Court further held that "exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur." *Id.* In its first motion for summary judgment, Novapharm urged this Court to ignore the Federal Circuit Court's vacatur of the *Barr* decision and collaterally estop Zeneca from pursuing its patent infringement action against Novopharm. (Def's Mar. 17, 1995, rep. mem. at 3, 7–10). Specifically, Novopharm asked this Court to retroactively apply the holding in *U.S. Bancorp* to render the Federal Circuit's vacatur void. (Def's Mar. 17, 1995 rep. mem. at 7–9). To support its position that *U.S. Bancorp* should be retroactively applied in this case, Novopharm relied on a line of cases culminating in *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Novopharm's reliance on *Harper*, however, was unjustified. In *Harper*, the Supreme Court held that "the controlling interpretations of federal law must be given full retroactive effect *in cases still open on direct review.*" *Id.* at ——, 113 S.Ct. at 2517. In this case, the Federal Circuit's decision to vacate *Barr* was *not* still open on direct review when *U.S. Bancorp* was issued, and the Court, therefore, could not void the Federal Circuit's vacatur by giving retroactive effect to *U.S. Bancorp.* The *Barr* vacatur was final when *U.S. Bancorp* was issued, and nothing in *Harper* or *U.S. Bancorp,* or in any other case for that matter, suggests that this Court

could review or sustain a collateral attack upon a finally-decided vacatur. *See U.S. Philips Corp. v. Sears Roebuck & Co.,* 55 F.3d 592, 598 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 567, 133 L.Ed.2d 492 (1995) (refusing to reconsider the propriety of a vacatur that was final when the decision in *U.S. Bancorp* was issued). The Court (per Young, J.), therefore, correctly refused to give retroactive effect to *U.S. Bancorp,* in a Memorandum Opinion dated September 11, 1995.

■ This Court also correctly rejected Novopharm's argument that it should ignore the Federal Circuit's vacatur order because of the public's interest in patent rights. Sept. 11, 1995 Mem.Op. at 10. It is true that the public, the judiciary and private litigants, like Novopharm, all have a significant interest in preventing patent owners from relitigating the validity and enforceability of a patent that another court has held to be invalid and unenforceable. *See Blonder–Tongue Laboratories Inc. v. University of Illinois Foundation,* 402 U.S. 313, 330–350, 91 S.Ct. 1434, 1443–1453, 28 L.Ed.2d 788 (1971). The public and the judiciary, however, also have an interest in encouraging settlement and in upholding private bargains between parties, especially in a case like this, where the conditions of the settlement were expressly sanctioned by a court. Jill E. Fisch, *Rewriting History: The Propriety of Eradicating Prior Decisional Law Through Settlement and Vacatur,* 76 Cornell L.Rev. 589, 619 (1991) [hereinafter *Settlement and Vacatur* ]. Judge Young weighed these competing interests in his September 11, 1995, Memorandum Opinion and correctly held that "in light of ... [ICI's expectation] that the ... [*Barr* case] would have no precedential value following settlement, it would be inappropriate to ... [ignore the Federal Circuit's vacatur.]" Sept. 11, 1995, Mem.Op. at 4.

After the Court's denial of Novopharm's motion for summary judgment, discovery commenced. After the completion of discovery, the case was transferred from Judge Young to the undersigned. On February 9, 1996, Novopharm filed the motion for partial summary judgment which is currently before this Court.

## II. *Legal Analysis*

In its motion, Novopharm does not challenge the Court's September 11, 1995, order refusing to ignore the vacatur of the *Barr* decision, but, rather, urges this Court to adopt, under the doctrine of issue preclusion,[1] two of the vacated *Barr* decision's factual findings. Novopharm asserts that the *Barr* Court's factual findings with respect to: "(a) the materiality of the mouse test data admittedly withheld by ICI and Dr. Walpole from the USPTO, and (b) the intent by ICI and Dr. Walpole to mislead and deceive the USPTO into granting the claims in the '516 patent," (Def's mem. at 11), were fully litigated in the *Barr* case and decided adversely to Zeneca. Novopharm argues that Zeneca, therefore, should be prevented·from relitigating these factual issues even though the *Barr* judgment was vacated.

As a general rule, a vacated judgment and the factual findings underlying it have no preclusive effect; the judgment is a legal nullity. *S–1 By and Through P–1 v. State Bd. of Educ.*, 6 F.3d 160, 169 (4th Cir.1993) (Wilkinson, J., dissenting), *vacated,* 21 F.3d 49 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994); *Baltimore Luggage Co. v. Samsonite Corp.,* 727 F.Supp. 202, 209 (D.Md.1989). *See also United States v. Munsingwear,* 340 U.S. 36, 40, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950) (vacating a judgment "clears the path for future relitigation of the issues between the parties and eliminates a judgment"); *Settlement and Vacatur, supra,* at 616. Novopharm nonetheless asserts that "the factual findings underlying a procedurally vacated judgment may be the basis for issue preclusion to prevent relitigating those same factual issues in a subsequent case." (Def's mot. at 13). To support its position, Novopharm relies on *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149 (5th Cir.1982), *vacated on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983).

In *Chemetron,* the Fifth Circuit held that the defendant could be collaterally estopped from relitigating facts which had been decided adversely to him in a prior case even though the factual findings in the prior case were withdrawn and set aside by the trial judge when the case was dismissed as a result of settlement. *Id.* at 1189. In so holding, the court stated:

> We see ... [nothing] that would render the use of offensive collateral estoppel ... in any way unfair 'in the particular circumstances' of this case. Tactically, [the losing party] chose to litigate fully, ... risking an adverse decision. He lost on that risk, and only when he lost did he decide to settle, fearing offensive collateral estoppel. Yet now he seeks to avoid the consequences of that loss by elevating form over substance.· He cannot have it both ways. The findings of fact ... are sufficiently final to permit their use in this case. On remand, Bintliff should be collaterally estopped from relitigating those facts.

*Id.* at 1192. Novopharm urges this Court to adopt the reasoning in *Chemetron* and prohibit Zeneca from relitigating the materiality of the mouse test data and the intent of ICI and Dr. Walpole in withholding such data. The Court declines Novopharm's invitation.

First, no court in the Fourth Circuit has ever followed *Chemetron* and given collateral estoppel effect to a vacated judgment. In *Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348, 1355 (4th Cir.1987), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988), the Fourth Circuit case most similar to the case at bar, the Court refused to give collateral estoppel effect to the vacated findings of a special master. In so refusing, the Court considered and rejected the argument, much like Novopharm's argument here, that "the defendant should not be able to manipulate the judicial system by entering into last minute settlements in order to avoid the collateral estoppel effects of unfavorable

---

1. The doctrine of issue preclusion, or collateral estoppel as it is also known, precludes " 'the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in ·which the party against whom [issue preclu-

sion] is asserted had a full and fair opportunity to litigate.' " *Ramsay v. U.S. Immigration and Naturalization Service,* 14 F.3d 206, 210 (4th Cir. 1994) (quoting *Virginia Hospital Association v. Baliles,* 830 F.2d 1308 (4th Cir.1987)).

judgments."[2] *Id.* Moreover, the other pertinent Fourth Circuit opinions both suggest that vacated judgments have no preclusive effect whatsoever. *S–1 By and Through P–1*, 6 F.3d at 169 (Wilkinson, J., dissenting); *Baltimore Luggage Co.*, 727 F.Supp. at 209 ("a judgment that is vacated on appeal is … deprived of all preclusive effect, both as to res judicata and collateral estoppel.").

Second, courts have not widely followed *Chemetron's* holding with respect to the collateral estoppel effect of a vacated judgment.[3] *Settlement and Vacatur, supra*, at 619. *See e.g. Harris Trust and Savings Bank v. John Hancock Mutual Life Insurance Co.*, 970 F.2d 1138, 1146 (2d Cir.1992), *aff'd*, 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (holding that a vacated judgment has no preclusive effect); *Pontarelli Limousine, Inc. v. Chicago*, 929 F.2d 339, 340–341 (7th Cir.1991); *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir.1985). In fact, the only other circuit that has given collateral estoppel effect to a vacated judgment is the Ninth Circuit in *Bates v. Union Oil Co.*, 944 F.2d 647, 650–652 (9th Cir.), *cert. denied*, 503 U.S. 1005, 112 S.Ct. 1761, 118 L.Ed.2d 424 (1992).[4] *Bates*, however, is an unusual case.

In the Ninth Circuit, courts, deciding whether to vacate an opinion, must balance

" 'the competing values of finality of judgment and the right to relitigation of unreviewed disputes.' " *Id.* at 650 (quoting *Ringsby Truck Lines, Inc. v. Western Conference of Teamsters*, 686 F.2d 720, 722 (9th Cir.1982)). If a court grants vacatur after engaging in the balancing process, then the vacated judgment has no preclusive effect. *Id.* In *Bates*, the district court failed to engage in the balancing test when it vacated its judgment. The Ninth Circuit, therefore, considered the preclusive effect of the vacated judgment in the case, and ultimately held that the judgment could be given collateral estoppel effect. *Id.* at 651. The court reached this holding in order to encourage parties "to call to the district courts' attention [the balancing test] at the time vacatur is sought." *Id.* The holding in *Bates* was based on the Ninth Circuit's desire to get courts to consider the consequences of vacatur before vacating a judgment: The *Bates* case, therefore, does not support the general proposition that vacated judgments should be given collateral estoppel effect. Indeed, as previously stated, once a court in the Ninth Circuit engages in the balancing test and vacates a judgment, the vacated judgment loses any preclusive effect it might otherwise have had.[5] *Id.*

**2.** The only other Fourth Circuit case which has even cited *Chemetron* with respect to collateral estoppel is *Swentek v. USAIR, Inc.*, 830 F.2d 552 (4th Cir.1987). *Swentek*, however, did not involve a vacated judgment.

**3.** Not only has *Chemetron* not been widely followed by Courts outside the Fifth Circuit, but the vitality of the *Chemetron* holding with respect to the preclusive effects of vacated judgments has also been questioned by the Court of Appeals for the Fifth Circuit. For example, in *Hughes v. Santa Fe Int'l Corp.*, 847 F.2d 239, 242 (5th Cir.1988), the Fifth Circuit, addressing a party's reliance on *Chemetron's* holding regarding the preclusive effect of vacated judgments, wrote: "Chemetron has no precedential force because the original panel was vacated and remanded by the Supreme Court, and the panel opinion on remand was ordered reheard en banc and thus was vacated." And in *Falcon v. General Telephone Company*, 815 F.2d 317, 320 (5th Cir. 1987), the Fifth Circuit ignored *Chemetron* and stated that the Supreme Court's vacatur of a district court's decision "swept away all that was tied to that judgment … includ[ing] all findings of fact." Significantly, none of the Fifth Circuit cases that have cited *Chemetron* with approval since *Hughes* and *Falcon* have involved the issue

of the collateral estoppel effects of a vacated judgment. *See e.g. Cycles Ltd. v. Navistar Financial Corp.*, 37 F.3d 1088, 1090 (5th Cir.1994) (citing *Chemetron* to support the proposition that "judgments are final for purposes of issue preclusion when fully litigated, even if not yet appealable"); *See also Jolley v. Welch*, 904 F.2d 988, 993 n. 3 (5th Cir.1990), *cert. denied*, 498 U.S. 1050, 111 S.Ct. 762, 112 L.Ed.2d 781 (1991) (invoking *Chemetron* on the securities issue despite the fact that the opinion was vacated by the Supreme Court).

**4.** Novopharm cites to a number of cases to support its position that *Chemetron* has vitality in other circuits. *See* Def's rep. mem. at 11. Not one of the cases cited, however, addresses the issue regarding the preclusive effects of a judgment that has been vacated upon settlement.

**5.** The fact that the Federal Circuit did not engage, as Ninth Circuit courts do, in a balancing test prior to vacating the *Barr* judgment does not justify giving collateral estoppel effect to the vacated factual findings of the *Barr* court. After all, if a Ninth Circuit court refuses to vacate a judgment upon settlement after engaging in the

Finally, collateral estoppel is an equitable doctrine, *Maryland Casualty Co. v. Armco Inc.*, 822 F.2d 1348, 1355 (4th Cir.1987), and in this case, the equities counsel against employing it. The Court recognizes the public costs of vacatur. *U.S. Bancorp*, — U.S. at —, 115 S.Ct. at 386; *see Settlement and Vacatur, supra,* at 607–641. Indeed, the Federal Circuit's vacatur of the *Barr* decision exacted a cost in that it "resurrected the '516 patent, allowing it to be foisted upon the general public in actions such as this one." (Def's mot. at 3). The fact that this Court and the parties will have to relitigate the validity and enforceability of the '516 patent as a result of the vacatur, however, does not justify giving collateral estoppel effect to the factual findings of the vacated *Barr* judgment.

As Judge Young noted in his September 11, 1995, Memorandum Opinion, the settlement in the *Barr* case, which occurred before *U.S. Bancorp* was issued, was explicitly contingent on the Federal Circuit's vacating the district court's judgment so that it would have no preclusive or precedential effect. Indeed, ICI relinquished its right to appeal based on the vacatur. Under such circumstances, it remains the position of this Court that it would be unfair to deprive Zeneca of the benefit of its bargain by giving collateral estoppel effect to the *Barr* court's factual findings. *See Settlement and Vacatur, supra,* at 619.

In the alternative, Novopharm argues that even "if this Court decides not to give issue preclusive efforts [sic] to the *Barr* district court's factual findings on the materiality and intent issues, those findings (despite the vacatur ...) continue to have persuasive value as precedent in this case. And, ... this Court should follow those findings as precedent and adopt them as its own on those issues." (Def's mem. at 18 and 20).

■ While the *Barr* decision may be relevant to this case for its analysis and *may* provide this Court with guidance on the issues before the Court, *see* Judith Resnick, *Whose Judgment? Vacating Judgments,*

*Preferences for Settlement, and the Role of Adjudication At the Close of the Twentieth Century,* 41 UCLA L.Rev. 1471, 1509 (1994), it is clear that the vacated *Barr* decision has no binding precedential effect here. *Mylan Laboratories, Inc. v. Pharmaceutical Basics, Inc.*, 808 F.Supp. 446, 458 n. 13 (D.Md.1992), *rev'd on other grounds, Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir.1993) (A vacated district court judgment has "no direct precedential value."); *see also Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir.1993) ("A [vacated] district court decision has no precedential effect[;] it binds no judge in any other case, save to the extent that doctrines of preclusion apply."). Granting a motion for summary judgment merely on the basis of *Barr's* purported persuasive value would therefore be utterly inappropriate.

### III. *Conclusion*

For the reasons stated, there are genuine issues as to material facts to be litigated in this case. Consequently, Novopharm's motion for partial summary judgment is *denied.*

So ordered.

---

balancing test, the parties, realizing that the judgment will therefore have preclusive effect, may opt to reject the settlement and appeal the judgment. In this case, when the *Barr* judgment was vacated, both parties assumed that the vacated judgment would lose all preclusive effect.