782 F.2d 995
 54 USLW 2420, 228 U.S.P.Q. 562
 WINDSURFING INTERNATIONAL, INC., Appellees,
v.
AMF, INCORPORATED, Appellant.
BIC LEISURE PRODUCTS, INC., Windglider Fred Ostermann, GmbH,
Appellants/Cross-Appellees,
v.
WINDSURFING INTERNATIONAL, INC., Appellee/Cross-Appellant.
WINDSURFING INTERNATIONAL, INC., Cross-Appellant/Appellee,
v.
FRED OSTERMANN GMBH, Amf, Inc., Downwind Corp., and
Freeboard Sailing, Inc., Cross-Appellees/Appellants.
 Appeal Nos. 85-2808, 85-2809, 85-2835, 85-2836, 86-514 and 86-548.
 United States Court of Appeals,
Federal Circuit.
 Jan. 28, 1986.
 
 David H. Badger, Willian, Brinks, Olds, Hofer, Gilson & Lione, Indianapolis, Ind., argued for appellant AMF, Inc.
 Thomas F. Reddy, Jr., Pennie & Edmonds, of New York City, argued for appellant/cross-appellee BIC Leisure Products, Inc. With him on the brief were Joseph V. Colaianni, Pennie & Edmonds, Washington, D.C., and Brian M. Poissant, Pennie & Edmonds, New York City.
 Harold E. Wurst, Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal., argued for appellee/cross-appellant Windsurfing Intern., Inc. With him on the brief was David R. Francescani, Darby & Darby, New York City.
 Pasquale A. Razzano, Curtis, Morris & Safford, P.C., New York City, was on the brief for Downwind Corp.
 Before MARKEY, Chief Judge, SMITH and NEWMAN, Circuit Judges.
 MARKEY, Chief Judge.
 
 
 1
 Consolidated appeal from two judgments of the United States District Court for the Southern District of New York: (1) holding claims 15-21 of Windsurfing International's (WSI's) U.S. Patent Re. 31,167 ('167 patent) valid and infringed; (2) holding that WSI had misused the patent; (3) enjoining AMF, Inc. (AMF), BIC Leisure Products, Inc., and Windglider Fred Ostermann, GmbH (BIC); and (4) refusing to enjoin infringing defendant Downwind Corp. (Downwind). 613 F.Supp. 933, 227 USPQ 927 (S.D.N.Y.1985). We affirm in part, reverse in part, vacate in part, and remand.
 
 Background
 
 2
 (1) Proceedings in the District Court
 
 
 3
 WSI sued AMF, BIC and Downwind, alleging infringement of its '167 patent. AMF then sought a declaratory judgment that the patent is invalid for obviousness under 35 U.S.C. Sec. 103, unenforceable because of patent misuse, and not infringed. Also, AMF sought the cancellation of WSI's registrations of "WINDSURFER" and related trademarks[1] on grounds that the marks had become generic. BIC sued WSI, seeking a declaration that the '167 patent is invalid for obviousness, unenforceable, and not infringed.
 
 
 4
 Consolidating the three actions, the district court held a non-jury trial on 13 dates between November 19 and December 11, 1984, filed an opinion July 15, 1985 and entered judgments on September 11, 1985. AMF in Appeal Nos. 85-2808/2809, BIC in No. 85-2835, and Downwind in No. 86-548, appeal from the judgments holding the '167 patent valid and infringed. AMF and BIC appeal from the grant of injunctions.[2] In Appeal Nos. 85-2836 and 86-514, WSI cross-appeals from the judgments holding it misused its patent and refusing to enjoin Downwind.
 
 
 5
 (2) The '167 Patent
 
 
 6
 The patent in suit relates to the sport of "sailboarding",[3] in which participants ride boards propelled by wind striking sails attached to the boards.
 
 
 7
 A preferred embodiment of the claimed invention is shown in Figure 1 of the '167 patent:
 
 
 8
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 9
 A participant stands on the top surface of surfboard 10 behind universal joint 36, grasps boom 16 or boom 18 (depending on wind direction), and controls the speed and direction of the board by maneuvering the boom to which sail 14 is attached. If a participant begins to lose control in a sudden wind surge, he or she merely releases the boom and the universal joint allows the sail to fall freely into the water.
 
 Claim 15 is representative:
 
 10
 15. Wind-propelled apparatus comprising body means adapted to support a user and wind-propulsion means pivotally associated with said body means and adapted to receive wind for motive power for said apparatus, said propulsion means comprising a mast, a joint for mounting said mast on said body means, a sail and means for extending said sail laterally from said mast comprising two opposed booms secured to said mast for guiding said sail therebetween and adapted to provide a hand-hold for said user on either side of said sail while sailing, the position of said propulsion means being controllable by said user, said propulsion means being substantially free from pivotal restraint in the absence of said user, said joint having a plurality of axes of rotation whereby said sail free falls along any of a plurality of vertical planes upon release by said user. [Emphasis added.]
 
 
 11
 The underscored limitation sets forth the boom and was added when WSI's U.S. Patent No. 3,487,800 was reissued as the '167 patent.
 
 ISSUES
 
 12
 Did the district court err in: (1) holding the claimed invention nonobvious under 35 U.S.C. Sec. 103[4]; (2) finding infringement; (3) holding patent misuse; (4) enjoining AMF and BIC; and (5) refusing to enjoin Downwind.
 
 OPINION
 
 13
 (1) Non-obviousness
 
 
 14
 On appeal, AMF[5] argues that the district court erred in upholding the '167 patent because it: (a) improperly deferred to decisions by the U.S. Patent and Trademark Office Board of Appeals (Board); (b) compared preferred and commercial embodiments with the prior art; and (c) considered commercial success having no nexus with the claimed invention.
 
 
 15
 (a) Deference
 
 
 16
 In deferring to the Board's decisions concerning the allowance of the claims in the reissued patent, the district court was recognizing the statutory mandate that all patents are presumed valid. 35 U.S.C. Sec. 282 (1982); see Fromson v. Advance Offset Plate, Inc., 755 F.2d 1549, 1555, 225 USPQ 26, 31 (Fed.Cir.1985). The district court carefully considered whether the evidence not presented in the "fiercely contested adversarial proceeding" before the Board would ease AMF's burden of proving facts compelling a conclusion of invalidity.[6] 613 F.Supp. at 943-45, 227 USPQ at 935-36; see American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359-60, 220 USPQ 763, 770 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). Concluding that the evidence at trial was merely cumulative of that before the Board, the court correctly held that that evidence did not enable AMF to carry the burden imposed by Sec. 282.
 
 
 17
 AMF contends that, because the Board did not mention the obviousness of replacing the rig, shown in a publication referred to as the "Darby reference", with the boom disclosed in the '167 patent, no deference is due the Board decisions. The district court carefully reviewed the administrative record and stated that such argument "oversimplifies the depth of the Board's review and assumes the Board ignored other issues raised in the parties' extensive briefs." 613 F.Supp. at 945, 227 USPQ at 936. We agree. Merely because a decision does not mention a particular point "forms no basis for an assumption that it did not consider those elements." Perkin Elmer Corp. v. Computervision Corp., 732 F.2d 888, 901, 221 USPQ 669, 679 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). Moreover, the district court correctly noted that "the Board ... reaffirmed its original holding that combination of '[t]he hand-held wishbone rigging [boom] with the vehicle swivel mast attachment produces ... a unique sailing apparatus....' " 613 F.Supp. at 945, 227 USPQ at 936. We are satisfied that the district court did not err in this case in giving "deference that is due to a qualified government agency presumed to have properly done its job." American Hoist, supra, 725 F.2d at 1359, 220 USPQ at 770; see Panduit Corp. v. Dennison Manufacturing Co., 774 F.2d 1082, 1096, 227 USPQ 337, 346 (Fed.Cir.1985).
 
 
 18
 (b) Comparison
 
 
 19
 The district court conducted a thorough Graham[7] analysis under Sec. 103 before concluding that the claimed invention at the time it was made would not have been obvious to one of ordinary skill in the art. AMF attacks the district court's findings as clearly erroneous, asserting it compared to the prior art not the claimed invention but commercial and preferred embodiments as representative of the claimed invention. See Jackson Jordan, Inc. v. Plasser American Corp., 747 F.2d 1567, 1578, 224 USPQ 1, 9 (Fed.Cir.1984) (claims, not embodiments, are focus of obviousness inquiry). Those embodiments include a "scoop" on a slimmer hull-shaped board, a skeg, and footstraps. Thus, they argue that the advantages found by the court are attributable to a combination of those design improvements and not to the claimed invention.
 
 
 20
 The district court did determine that it would have been obvious to replace a kite sail with a fore and aft sail, and to add a second opposed boom.[8] Properly looking to the claimed invention at the time it was made as a whole, as required by Sec. 103, the district court correctly concluded that "the combination of the hand-held wishbone rigging with the universal joint produced a vehicle that performs in a manner previously undisclosed by any of the prior art references before us and, indeed, a vehicle with a performance potential that is even now not yet fully realized." 613 F.Supp. at 948, 227 USPQ at 938.
 
 
 21
 WSI's expert, Dr. Bradfield, conceded that certain advantages were due to particular added improvements, but he consistently maintained that the overall performance capabilities of the claimed invention were mainly due to the combination of the universal joint and the wishbone rigging. The district court found that testimony credible and AMF has shown no basis on which this court could engage in the normally inappropriate process of substituting a contrary credibility determination for that of the district court.
 
 
 22
 (c) Nexus
 
 
 23
 Before concluding that the combination of the universal joint with the wishbone rigging would not have been obvious, the district court reviewed the objective evidence, Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir.1983), and correctly sought a nexus between WSI's commercial success and the merits of the claimed invention. Cable Electric Prods. v. Genmark, Inc., 770 F.2d 1015, 1026, 226 USPQ 881, 887 (Fed.Cir.1985).
 
 
 24
 In essence, AMF says that the commercial success found by the district court was due in large part to "other economic and commercial factors unrelated to the technical quality of the patented subject matter." Id. at 1027, 226 USPQ at 888. Particularly, AMF argues that the great commercial success found by the district court was due to: (1) sales of accessories amounting to 10-15 percent of the gross receipts; (2) an extensive advertising campaign and European promotional effort; and (3) more efficient manufacturing and design changes. They argue that WSI's commercial success is of little probative value because it occurred so many years after the date of invention and was not the result of providing any solution to some existing problem or longfelt want.
 
 
 25
 Having carefully reviewed the record before us, we conclude that the district court did not impermissibly credit the evidence of commercial success. It specifically found that WSI's commercial success should not be "significantly diminished" by testimony that 10-15 percent of gross receipts are from paraphernalia. 613 F.Supp. at 948 n. 84, 227 USPQ at 938 n. 84. The court accorded some weight to motivational factors leading to German licenses, but concluded that "widespread recognition and use of the invention" indicated that it would not have been obvious. Id. at 949, 227 USPQ at 938-39. The commercial success of the invention was found to have been "well beyond the effect" of WSI's promotional efforts. Id., 227 USPQ at 939.
 
 
 26
 Absent some intervening event to which success must be attributed, the delay in achieving the great commercial success of the claimed invention in this case does not detract from the probative value of the evidence of that success. Similarly, AMF's suggestion that objective evidence of non-obviousness can be considered only when the invention solves a long-existing problem is unwarranted. Providing a solution to a long existing problem is but one type of objective evidence useful in making obviousness/non-obviousness determinations. See Leinoff v. Louis Milona & Sons, Inc., 726 F.2d 734, 740, 220 USPQ 845, 849 (Fed.Cir.1984). Further, the district court correctly noted that copying the claimed invention, rather than one within the public domain, is indicative of non-obviousness. 613 F.Supp. at 949, 227 USPQ at 939; see Panduit Corp., supra, 774 F.2d at 1099-1100, 227 USPQ at 348-49.
 
 
 27
 Having carefully considered AMF's arguments and the evidence relied upon by the district court, we conclude that AMF has not discharged its burden on appeal, i.e., of persuading us that the district court committed reversible legal error in its determination that the invention would not have been obvious, or that the court's probative findings underlying that determination were clearly erroneous. See Atlas Powder Co. v. E.I. DuPont De Nemours, 750 F.2d 1569, 1573, 224 USPQ 409, 411 (Fed.Cir.1984). Accordingly, the presumptive validity of the '167 patent remains unscathed and the judgment upholding claims 15-21 of the '167 patent is affirmed.
 
 
 28
 (2) Infringement
 
 
 29
 Downwind alone appeals from the judgment of infringement, urging that its structure does not have a "joint having a plurality of axes of rotation." Downwind employs a flexible rubber tube or rod connecting the mast and the board.
 
 
 30
 Claim interpretation is a question of law, McGill, Inc. v. John Zink Co., 736 F.2d 666, 221 USPQ 944, 948 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 514, 83 L.Ed.2d 404 (1985), but we have been shown no basis for upsetting the district court's interpretation of the claims as covering a structure that permits the mast to pivot with respect to and about a number of axes. Downwind's contention that a flexible rubber tube is not "mechanical", and does not rotate, and thus is not a "joint" within the meaning of the claims, is without merit. The word "mechanical" does not appear in the claims, the twisting of the flexible tube is about an axis of rotation, and the tube forms a joint between the mast and board.
 
 
 31
 Whether Downwind's accused device infringes the claims as interpreted is a fact question, Raytheon Co. v. Roper Corp., 724 F.2d 951, 961, 220 USPQ 592, 600 (Fed.Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984), and a finding on that question will not be upset unless clearly erroneous. Carmen Industries, Inc. v. Wahl, 724 F.2d 932, 941, 220 USPQ 481, 488 (Fed.Cir.1983). None of the accused infringers has attempted to rebut the testimony on which the district court relied in finding infringement. Downwind has not shown that the claims must be given its own unduly narrow interpretation or that the district court's finding of infringement was clearly erroneous. Accordingly, the judgment of infringement is affirmed.
 
 
 32
 (3) Patent Misuse
 
 
 33
 AMF's allegation of patent misuse is based on this paragraph included in license agreements between WSI and eleven licensees:
 
 10. Trademarks
 
 34
 LICENSEE hereby acknowledges that the terms "WINDSURFER", "WINDSURFING", and "WIND SURF" and the logo which is attached hereto as Exhibit 3 are all valid trademarks. LICENSEE hereby agrees not to use any of the trademarks identified in this paragraph 10 in any form or fashion in its company name or any of its literature or advertising or promotional material or on any products whatsoever.
 
 
 35
 The district court said that whether that provision gives rise to a patent misuse defense depends on whether the registered trademarks are generic. Having found the marks generic, the court concluded "that Paragraph 10 has an intrinsically inhibiting effect on competition beyond the scope of the patent...." 613 F.Supp. at 953, 227 USPQ at 942.
 
 
 36
 The court went on to determine that the "level of misuse" did not warrant rendering the patent entirely unenforceable because the court found the "record insufficient to determine fairly the extent to which WSI sought to enforce the provision and the extent of any monetary gain to it" and also found the record insufficient to support a finding that "WSI necessarily would or should have known that its mark had become a common descriptive name for the product." Id.
 
 
 37
 The court set the damages issue for determination at a later time, deferred until that time "the resolution as to what relief, if any, WSI's misuse of its patent privilege warrants," and decided to enforce the '167 patent. Id.
 
 
 38
 In its cross-appeals, WSI contends that a mere inclusion in a patent license agreement of a promise not to infringe a licensor's trademark does not constitute patent misuse. Acts constituting misuse, says WSI, must be "coercive" toward an improper advantage. WSI argues that it was merely asserting rights it possessed under the trademark laws and, thus, the patent misuse defense should fall.
 
 
 39
 The doctrine of patent misuse is an affirmative defense to a suit for patent infringement, see Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp., 739 F.2d 604, 617, 222 USPQ 654, 664 (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 516, 83 L.Ed.2d 405 (1984), and requires that the alleged infringer show that the patentee has impermissibly broadened the "physical or temporal scope" of the patent grant with anticompetitive effect. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 343, 91 S.Ct. 1434, 1450, 28 L.Ed.2d 788, 169 USPQ 513, 525 (1971). We have been cited to no authority, and are aware of none, for the proposition that patent misuse may be found on the basis of a patent license agreement provision recognizing and forbidding use of the licensor's validly registered trademarks.
 
 
 40
 To sustain a misuse defense involving a licensing arrangement not held to have been per se anticompetitive by the Supreme Court,[9] a factual determination must reveal that the overall effect of the license tends to restrain competition unlawfully in an appropriately defined relevant market. A provision in a patent license agreement requiring the licensee to acknowledge the validity of registered trademarks, and to avoid their use, cannot possibly restrain competition unlawfully in an appropriately defined relevant market. The license agreement provision merely asserted and recognized WSI's rights derived from the trademark laws. The assertion of trademark rights can have procompetitive effects, see generally, 1 J.T. McCarthy, Trademarks and Unfair Competition Sec. 2.1, at 44-49 (2d ed. 1984), and thus under only the most rare of circumstances could such assertion, separately or as a provision in a patent license agreement, form in itself the basis for a holding of inequitable conduct such as that labled "patent misuse". It is not an uncommon precaution when licensing a product sold by the licensor under a trademark to prohibit the licensee from using the licensor's trademark on the licensee's product. That is but a matter of business prudence and in no manner misuses the patent right.
 
 
 41
 That the marks were found generic after trial and long after execution of the license cannot of itself prevent a full enforcement of the '167 patent. Trademark registrations enjoy a statutory presumption of validity. 15 U.S.C. Sec. 1057(b) (1982). As the district court found, AMF failed to show that WSI granted the licenses or enforced its rights in the marks with knowledge that they were or had become a common descriptive name, and AMF failed to show that WSI should have had that knowledge. On the present record, the district court was improperly persuaded to rest its holding of misuse entirely on an after-the-fact determination that the marks are generic. Because that was error, the holding that the facts of record established a misuse of the patent right must be reversed.[10]
 
 
 42
 (4) Injunctions
 
 
 43
 The statute, 35 U.S.C. Sec. 283, empowers district courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." The statute makes clear that the district court's grant or denial of an injunction is within its discretion depending on the facts of each case. Roche Products, Inc. v. Bolar Pharmaceutical Co., 733 F.2d 858, 865-66, 221 USPQ 937, 942-43, (Fed.Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984). Hence, the district court's grant or denial of an injunction is reviewed under an abuse of discretion standard. See Trans-World Manufacturing Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552, 1564, 224 USPQ 259, 266 (Fed.Cir.1984).
 
 
 44
 The holding of misuse having been reversed, we need not address AMF's contention that the district court should not have enjoined further infringement of the '167 patent in light of that holding.
 
 
 45
 AMF argues that the district court improperly ignored its intervening rights, a defense it contends was raised in the pleadings and at the injunction hearing, citing Seattle Box Co. v. Industrial Crating & Packing, Inc., 756 F.2d 1574, 1579, 225 USPQ 357, 361 (Fed.Cir.1985). See 35 U.S.C. Sec. 252 (1982).[11] AMF made no mention of its intervening rights defense at the trial.
 
 
 46
 Nothing in Seattle Box addresses the point at which the intervening rights defense must be raised to preserve it. Intervening rights, however, is "an affirmative defense ... that must be raised at trial." Underwater Devices, Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1388, 219 USPQ 569, 575 (Fed.Cir.1983); see 35 U.S.C. Sec. 282. That AMF pleaded the defense is insufficient. That it failed to make any attempt to prove the defense at trial is in this case fatal. AMF cannot be held to have resuscitated the defense by the mere submission of affidavits at a post-trial hearing. To so hold would run counter to the finality attaching to trials. District courts are under no obligation to consider a defense abandoned at trial. Accordingly, no abuse of discretion having been shown, we affirm the district court's grant of injunctive relief against AMF and BIC.
 
 
 47
 On its cross-appeal, WSI urges that the district court abused its discretion in refusing to enjoin Downwind. In denying injunctive relief against Downwind, the district court stated from the bench:
 
 
 48
 I am prepared to say at the present time that I do not believe that an injunction against Downwind is appropriate. As bad as Windsurfing's problems I am prepared to believe may be, I do not believe that enjoining Downwind, which is such a small operation, would solve their problems, not that I think an injunction's purpose is simply to solve its problems; and so I mention that because I don't think you need to argue further on that.
 
 
 49
 The relative size of multiple infringers should not alone serve as a basis for enjoining continued infringement by some and not by others.[12] The district court articulated no other basis for denying injunctive relief against Downwind. On the present record, therefore, we must conclude that the district court abused its discretion in refusing to enjoin Downwind. Accordingly, we remand the case to the district court to reconsider WSI's request for an appropriate injunction against Downwind.
 
 CONCLUSION
 
 50
 The judgment of the district court upholding the validity of claims 15-21 of the '167 patent and finding them infringed, and the grant of injunctions against AMF and BIC are affirmed. The judgment that WSI is guilty of patent misuse is reversed. The case is remanded with instructions to vacate the order denying an injunction against Downwind and to reconsider WSI's request for that injunction.
 
 
 51
 AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 1 U.S. Trademark Registration Nos. 962,616, 997,974, 1,180,024, and 1,195,641. The district court held that WSI's trademarks have become generic. The district court has not yet entered judgment to that effect and the trademark issue of genericness is not part of this appeal.
 
 
 [2]
 The district court permanently enjoined AMF, but "preliminarily" enjoined BIC pending termination of a related action by Intervenor James R. Drake claiming an ownership interest in the '167 patent. See 223 USPQ 509 (S.D.N.Y.1983)
 
 
 [3]
 We refer to the patented structure as a "sailboard" and not as a "windsurfer" because whether the latter term has become generic is not yet final
 
 
 [4]
 35 U.S.C. Sec. 103 provides:
 A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.
 
 
 [5]
 Because BIC raises many of the same arguments, and Downwind relies principally on the arguments raised by BIC and AMF, this opinion hereinafter refers to the three parties collectively as AMF, unless otherwise indicated
 
 
 [6]
 The "proceeding" referred to comprised the initial application for reissue, a protest, an appeal to the Board, a remand to the examiner, a second appeal to the Board, and an appeal to the Court of Customs and Patent Appeals. The district court described these events in its opinion. 613 F.Supp. at 942-44, 227 USPQ at 934-35
 
 
 [7]
 Graham v. John Deere, 383 U.S. 1, 17-18, 86 S.Ct. 684, 693-94, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966)
 
 
 [8]
 Contrary to BIC and Downwind's contentions, a conclusion that it would have been obvious to replace the sails and add a boom does not require a conclusion that the claimed invention considered as a whole would have been obvious. The claims include more, e.g., a universal joint and its relationship to board, mast, boom, and sail
 
 
 [9]
 Recent economic analysis questions the rationale behind holding any licensing practice per se anticompetitive. See, e.g., USM Corp. v. SPS Technologies, Inc., 694 F.2d 505, 510-14, 216 USPQ 959, 963-66 (7th Cir.1982), cert. denied, 462 U.S. 107, 103 S.Ct. 2455, 77 L.Ed.2d 1334 (1983); Competition Policy and the Patent Misuse Doctrine, Remarks by Roger B. Andewelt, Chief, Intellectual Property Section, Antitrust Division, Department of Justice, Before the Bar Association for the District of Columbia, Patent, Trademark & Copyright Section, 25 Pat. Trademark & Copyright J. (BNA) No. 604 at 41, 44-45 (Nov. 11, 1982); cf. Continental TV, Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977) (changing the per se prohibition on vertical restrictions to a rule of reason approach)
 
 
 [10]
 We need not, in view of our determination, discuss the parties' contentions respecting the purging of misuse
 
 
 [11]
 BIC has not raised an intervening rights defense
 
 
 [12]
 Downwind said its infringing sales were between 1,000 and 2,000 sailboards a year since it began operations in 1981. AMF was selling about 1,800 sailboards a year during the same four-year period. That sailboards are Downwind's primary product, and that an injunction might therefore put Downwind out of business, cannot justify denial of that injunction. One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected. The district court, recognizing the absence of bad faith on the part of all parties, weighed the effect of its orders on each. In so doing it indicated that WSI's entire business was built on sailboards and accessories, and thus that Downwind and WSI were in the same boat. Under those circumstances, no warrant appears on this record for denying the requested injunction against continued infringement by Downwind