**ZENECA LIMITED, Plaintiff,**

v.

**PHARMACHEMIE B.V., Defendant.**

**No. Civ.A. 96–12413–RCL.**

United States District Court,
D. Massachusetts.

Feb. 26, 1999.

Gary C. Crossen, Foley, Hoag & Eliot, Boston, MA, pro se.

Gregory T. Moffatt, Foley, Hoag & Eliot, Boston, MA, pro se.

Kurt L. Schultz, Winston & Strawn, Chicago, IL, pro se.

Robert A. Skinner, Ropes & Gray, Boston, MA, plaintiff pro se.

Robert F. Wise, Jr., Davis Polk & Wardwell, New York City, plaintiff pro se.

### *ORDER*

LINDSAY, District Judge.

WHEREAS, Plaintiff Zeneca Limited ("Zeneca") filed a motion for partial summary judgment (# 73) seeking dismissal of Defendant Pharmachemie B.V.'s equitable counterclaims and affirmative defenses of collateral estoppel, patent misuse, and unclean hands;

WHEREAS, all discovery relating to the above-referenced counterclaims and affirmative defenses was completed prior to

the filing of Zeneca's motion for partial summary judgment;

WHEREAS, both parties filed extensive briefs (with each party receiving permission from the Court to file briefs in excess of twenty pages (# 79)) and documentary materials in support of and in opposition to Zeneca's motion for partial summary judgment;

WHEREAS, on June 17, 1998, the Court referred Zeneca's motion for partial summary judgment to Magistrate Judge Collings (# 87);

WHEREAS, Magistrate Judge Collings held a hearing on August 24, 1998 (# 144), during which counsel for Zeneca and Pharmachemie presented arguments in support of and in opposition to Zeneca's motion for partial summary judgment;

WHEREAS, Magistrate Judge Collings issued a Report and Recommendation on December 14, 1998 (# 182) recommending that Zeneca's motion for partial summary judgment be granted on the grounds that "Pharmachemie forthrightly concedes that under applicable law its affirmative defense of collateral estoppel must fail," that "[a]s a matter of law, the practice alleged does not fall with[in] the rubric of patent misuse", and that "the facts of this case do not support the defense of unclean hands as a matter of law"; and

WHEREAS, Defendant Pharmachemie has notified the Court that it will not file objections to the Report and Recommendation, and the ten-day period for filing such objections has expired;

IT IS HEREBY ORDERED that Plaintiff Zeneca's motion for partial summary judgment is GRANTED, that the affirmative defenses of collateral estoppel (Second Affirmative Defense), unclean hands (Third Affirmative Defense), and patent misuse (Fourth Affirmative Defense) raised by defendant Pharmachemie B.V. are stricken from this action, and that the corresponding counterclaims (Counts II, III, and IV), are dismissed with prejudice.

## AMENDED [1] REPORT AND RECOMMENDATION ON PLAINTIFF ZENECA'S MOTION FOR PARTIAL SUMMARY JUDGMENT (# 73)

COLLINGS, United States Magistrate Judge.

### I. Introduction

In March of 1996 plaintiff Zeneca Limited (hereinafter "Zeneca"), a corporation engaged in the business of research, development, manufacture and sale of pharmaceutical products, filed this infringement suit with respect its patent for tamoxifen citrate, a drug primarily used in the treatment of breast cancer, against defendant Pharmachemie B.V. (hereinafter "Pharmachemie"), a company also involved in pharmaceuticals. Close to two years thereafter in January, 1998, the defendant filed a second amended answer, the current operative pleading, which incorporated six affirmative defenses and a counterclaim. Subsequent to the close of discovery, Zeneca filed a motion for partial summary judgment on three of Pharmachemie's affirmative defenses, to wit, the Second Affirmative Defense of collateral estoppel, the Third Affirmative Defense of unclean hands, and the Fourth Affirmative Defense

---

1. This Amended Report and Recommendation is filed in accordance with the Court's Order this date allowing Zeneca's Motion to Impound Portions of Magistrate [Judge]'s Report and Recommendation (# 184). The original Report and Recommendation is impounded. The Amended Report and Recommendation is identical to the original except that certain confidential material quoted in the original has been deleted. As the Court indicated in the Order on Zeneca's motion to impound, entered this date, the inclusion of the specific confidential matters which have been removed from the Report are not essential to an understanding of the reasons behind the Court's recommendation, and disclosure of this "... business information ... might harm [Zeneca's] competitive standing." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (citations omitted).

of patent misuse.[2] Pharmachemie opposes the dispositive motion.[3] Following a thorough review of the parties' submissions, i.e., memoranda of law and a voluminous number of exhibits, and the benefit of oral argument, the motion for partial summary judgment is poised for resolution.

## II. The Facts

To a significant extent the pertinent historical facts underlying this litigation are uncontested. Rather, it is the implications or inferences to be drawn from those facts that are largely the source of controversy. In any event, when facts in this synopsis are the subject of dispute, it shall be duly noted.

Zeneca acquired ownership of the patent in suit, U.S. Patent 4,536,516 (hereinafter the " '516 patent"), from its predecessor, Imperial Chemical Industries PLC (hereinafter "ICI"), in 1993.[4] (Plaintiff Zeneca's Statement Of Undisputed Material Facts # 75 ¶ 2; Statement Of Pharmachemie B.V. Of Material Facts As To Which There Exists A Genuine Issue To Be Tried # 81 ¶ 1)[5] Although the original application was filed in 1963, it was over twenty years before the '516 patent issued to ICI in August of 1985. (# 75 ¶ 3; # 81 ¶ 2) Thus, pursuant to the patent grant, ICI was afforded the exclusive right to manufacture, sell and license tamoxifen citrate in the United States until August 20, 2002. (# 75 ¶ 3) Since 1993, Zeneca has marketed tamoxifen citrate under the trade name Nolvadex. (# 75 ¶ 3; # 81 ¶ 11)

In November, 1987, ICI sued Barr Laboratories (hereinafter "Barr") for patent infringement after Barr filed an Abbreviated New Drug Application with the Food and Drug Administration seeking approval to sell a generic form of tamoxifen citrate in the United States prior to the expiration of the '516 patent[6]. (# 75 ¶ 5; # 81 ¶ 5) Also named as a party defendant in that suit was Heumann Pharma, GmbH & Co. (hereinafter "Heumann"), Barr's supplier of tamoxifen citrate. (# 75 ¶¶ 5,6; # 81 ¶¶ 5,7) Within months of the commencement of the lawsuit, Heumann was dismissed as a defendant, with prejudice, in accordance with the terms of a stipulation and order executed by the all of parties and the presiding United States District Judge. (# 75 ¶ 7) One condition incorporated in the stipulation was that:

> HEUMANN agrees to be bound by any determination of the validity of U.S. Patent No. 4,536,516 as shall be adjudicated in this Action, to the extent that if U.S. Patent No. 4,536,516 is held to be valid in the Action, HEUMANN agrees not to supply Tamoxifen in the United States, apart from said supplies necessary solely for the purpose of obtaining approval of the Federal Food and Drug Administration as provided in 35 USC (sic) 271(e)(1), so long as said patent shall remain valid and in force. The fact that Heumann had agreed to be so bound hereunder shall not be relied on or divulged by ICI in any subsequent action for infringement under 35 USC § 271(e)(2). However, Heumann agrees not to assist or supply information to the defense of such action.

Declaration Of Joel M. Cohen # 76, Exh. 4 at ¶ 8.

---

2. The motion for partial summary judgment has been referred to the undersigned for the issuance of a report and recommendation as to disposition pursuant to 28 U.S.C. § 636(b).

3. Pharmachemie does concede that the defense of collateral estoppel lacks merit. *See, infra*, at p. 15.

4. Formerly a part of ICI, Zeneca became a separate company in 1993. (# 75 ¶ 2; # 81 ¶ 10)

5. In their respective statements, the parties reference various exhibits in support of their articulated facts. Unless otherwise noted, citations herein will be to the parties' statements rather than the primary foundational materials.

6. By statute, the submission of such an application constitutes an act of infringement. *See* Title 35 U.S.C. § 271(e)(2)(A).

The case ultimately proceeded to trial, and on April 20, 1992, Senior District Judge Broderick issued an opinion wherein he concluded that the '516 patent was invalid and unenforceable because ICI had engaged in inequitable conduct in that "crucial information was deliberately withheld from the disclosures needed by the PTO to evaluation the application." *Imperial Chemical Industries, PLC v. Barr Laboratories*, 795 F.Supp. 619, 626 (S.D.N.Y. 1992), *vacated*, 991 F.2d 811, 1993 WL 118931 (Fed.Cir.1993); (# 75 ¶ 8; # 81 ¶ 9) ICI appealed the district court decision. (# 76, Exh. 1 ¶ 5 and Exh. 2 ¶ 5)

In March of 1993, before any resolution of the issues at the appellate level by the Federal Circuit, Zeneca[7] and Barr reached a settlement. (# 75 ¶ 12; # 81 ¶ 10) Several provisions of the Confidential Settlement Agreement are pertinent in the current context. One of the prefatory paragraphs reads as follows:

WHEREAS, upon consideration of the District Court's opinion and the briefs filed in the Federal Circuit, including the Appendix and the record below, ICI believes that the Federal Circuit would most likely reverse the judgment of the District Court below, that ICI ultimately would prevail in the Litigation and that the '516 patent would be held valid and enforceable and Barr acknowledges that there are genuine issues presented and attendant litigation risk on appeal and that there is a substantial possibility that the Federal Circuit would reverse the judgment of the District Court below, that ICI ultimately would prevail in the Litigation and that the '516 Patent would be held valid and enforceable.

Declaration Of Joel M. Cohen # 76, Exh. 8 at 3.[8]

Pursuant to the terms of the settlement agreement, Zeneca was to pay Barr $21 million cash and

In addition to the payments set forth in paragraph 6 above, Barr and ZENECA Inc. shall execute the non-exclusive Distributorship and Supply Agreement ... contemporaneously with the execution of this Agreement pursuant to which ZENECA Inc. shall supply or have supplied to Barr generic tamoxifen citrate as identified in Schedule A of the [Distribution and Supply] Agreement which schedule may be amended, from time to time, pursuant to the terms and conditions set forth in paragraph 11 of the [Distribution and Supply] Agreement.

Declaration Of Joel M. Cohen # 76, Exh. 8 ¶ 7.

Finally of significance for present purposes are the provisions that:

Not later than the first business day following the execution of this Settlement Agreement, ICI and Barr shall file a joint motion to move the Federal Circuit to vacate the judgment of the District Court below, dated July 21, 1992, to dismiss the appeal (No. 92–1403) without prejudice, as moot, each party to bear its own attorneys' fees and costs, and to remand the case to the District Court with instructions that the case be dismissed without prejudice.

\*    \*    \*    \*    \*    \*

7.  Zeneca acquired ownership of the '516 patent around this time.

8.  Pharmachemie challenges the veracity of this clause:

The evidence at the Barr trial fully supported Judge Broderick's conclusion of inequitable conduct and, therefore, there was no basis upon which to believe that there was a reasonable likelihood that Zeneca would prevail in its appeal. As a result, contrary to the assertion in Zeneca's Statement ¶ 13 (quoting the particular prefatory clause), it is not likely that ICI believed that the Federal Circuit would "most likely reverse the judgment of the District Court below...". Barr's acknowledgment "that there was a substantial possibility that the Federal Circuit would reverse the judgement of the District Court" was made only because of the payoffs described below.

Statement Of Pharmachemie B.V. Of Material Facts # 81 ¶ 9 (citations omitted).

The settlement of the Litigation, the payment of any amounts due hereunder and the effective date of the Distributorship and Supply Agreement referenced in paragraph 7 below are contingent upon the Federal Circuit vacating the judgment below, the dismissal of the Litigation by the District Court and the transmission of Barr's amended certification to the FDA. If those courts fail to enter the orders in a form identical in substance attached hereto (sic) as Exhibits B and D, and Barr fails to notify the FDA in a form identical in substance to Exhibit E or if the judgment below is reinstated for any reason, this Settlement Agreement, including, without limitation, the releases executed pursuant to this Settlement Agreement, shall, at the election of either ICI or Barr, have no further force or effect.

Declaration Of Joel M. Cohen # 76, Exh. 8 ¶¶ 1,5.

The Distribution and Supply Agreement which was executed contemporaneously with the Confidential Settlement Agreement set forth the terms pursuant to which Zeneca would supply Barr with tamoxifen citrate for resale in the United States. (# 76, Exh. 9 ¶ 4) *Inter alia*, Barr was required to purchase all of the tamoxifen citrate that it resold in the United States from Zeneca at a price that was a certain percentage of Zeneca's wholesale druggists cost price. (# 76, Exh. 9 ¶¶ 4,5) The agreement also provided that

Barr may, at its option, terminate this Agreement for any of the following reasons:

\*　　\*　　\*　　\*　　\*　　\*

(2) In the event that the '516 Patent is held invalid and/or unenforceable in a final, unappealable judgment, Barr may terminate this Agreement immediately, provided, however, that Barr shall pay ZENECA for the inventory of the Product which ZENECA, or its designee, has manufactured or has in the manufacturing process for Product utilizing Barr's intagliation.

Declaration Of Joel M. Cohen # 76, Exh. 9 ¶ 24(b).

On March 3, 1993, Zeneca also entered into a Confidential Settlement Agreement with Heumann

for the sole purpose of resolving all disputes and claims between the parties with regard to the '516 Patent and the Litigation, and the Barr–Heumann Agreement and avoiding the further costs of the Litigation and the diversion of management from the conduct of their businesses, are willing to enter into the agreements, covenants and commitments set forth herein.

Declaration Of Joel M. Cohen # 76, Exh. 10 at 3.[9]

Pursuant to this agreement and a related Option Agreement,[10] Zeneca agreed to pay Heumann a $9.5 million cash payment and then, over a period of ten years, further payments totalling $35.9 million. (# 75 ¶ 21; # 81 ¶ 10) As a *quid pro quo*, Heumann agreed to release and discharge Zeneca and Barr from any claims arising out of their settlement agreement,[11] the Barr litigation or the '516 patent. Like the Zeneca/Barr agreement, the Zeneca/Heumann agreement was to become ef-

---

9. Pharmachemie disputes the statement that the "sole purpose" of the agreement was to resolve the disputes between Zeneca and Heumann. (# 81 ¶ 18)

10. The Option Agreement granted to Zeneca "the option to purchase quantities of tamoxifen citrate from Heumann ... to obtain further security of supply and to cater for the possibility that its own manufacturing facilities may in the future be inadequate to meet

demand." (Volume 2 Of Exhibits # 77, Exh. 12 at 1) Pharmachemie takes the position that in fact there was "no legitimate business purpose was satisfied by entering into this agreement." (# 81 ¶ 19)

11. Under the Zeneca/Barr settlement agreement, Zeneca effectively replaced Heumann as Barr's supplier of tamoxifen citrate for resale in the United States.

fective upon the entry of an order by the Federal Circuit vacating the judgment entered by Judge Broderick. (# 76, Exh. 10 ¶ 6) Again similar to the Zeneca/Barr agreement, the Zeneca/Heumann agreement shall terminate upon any of the following events:

7.2.1 entry of a final judgment which is final and unappealable invalidating the Patent or holding the Patent unenforceable; or

7.2.2 the entry of a final and unappealable court order or administrative decree in the United States of America requiring that Zeneca or its Affiliates license one or more un-Affiliated third parties to sell the Product in the United States of America; or

7.2.3 reinstatement on a final and unappealable basis for any reason of the District Court's judgment dated July 21, 1992 in the Litigation.

Volume 2 of Exhibits # 77, Exh. 12 at 11.

Adhering to the terms of their settlement agreement, Zeneca and Barr filed a Joint Motion To Dismiss The Appeal As Moot And To Vacate The Judgment Below in the United States Court of Appeals for the Federal Circuit. (# 77, Exh. 14) In the text of that motion, Zeneca and Barr represented that they had reached a settlement [12] resolving all the issues between the parties and, consequently, under Federal Circuit practice, it was requested that the appeal be dismissed and the district court judgment be vacated. (# 77, Exh. 14) Sidmak Laboratories, Inc. sought leave to file an amicus brief with respect to the motion to dismiss [13] which was opposed by both Zeneca and Barr. (# 77, Exh. 15, 16, 17, 18) On March 19, 1993, the Federal Circuit granted the motion to dismiss and denied the motion for leave to file an amicus curiae brief. *Imperial Chemical Industries, PLC v. Heumann Pharma GmbH & Co.*, 991 F.2d 811, (unpublished disposition), 1993 WL 118931 (Fed.Cir.1993).

Approximately two years after the vacatur in January of 1995, Zeneca filed another infringement suit with respect to the '516 patent, this time against Novopharm Limited, a pharmaceutical company which had filed an ANDA seeking permission to sell a generic form of tamoxifen citrate before Zeneca's patent expired. *Zeneca Limited v. Novopharm Limited,* 111 F.3d 144 (unpublished disposition), 1997 WL 168318 *1 (Fed.Cir.1997). The defendant swiftly moved for the entry of summary judgment on the grounds that the Federal Circuit's earlier vacatur order should be ignored [14] and that Zeneca was consequently collaterally estopped from claiming that the '516 patent was valid. *Zeneca Ltd. v. Novopharm Ltd.,* 923 F.Supp. 74, 75–6 (D.Md. 1995). The motion was denied. *Id.* at 76.

After the discovery phase of the litigation was completed, Novopharm filed a motion for partial summary judgment. *Zeneca Ltd. v. Novopharm Ltd.,* 919 F.Supp. 193, 195 (D.Md. 1996). The defendant now urged the Court to apply the doctrine of issue preclusion and adopt certain of the factual findings made by Judge Broderick in the *Barr* case. *Id.* 919

---

12. The parties specifically noted that "[a]s part of the Settlement Agreement (a) ICI shall cause Barr to be granted a non-exclusive right to sell a generic tamoxifen in the United States pursuant to the terms and conditions of a Distributorship and Supply Agreement between Barr and one of ICI's United States affiliates." Pharmachemie contends that "Barr is not selling a true generic tamoxifen." (# 81 ¶ 28)

13. The amicus curiae brief argued that the Federal Circuit should deny the parties' request that the district court judgment of inequitable conduct be vacated.

14. Novopharm posited that the vacatur order should be disregarded either because the Supreme Court's holding in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), must be given retroactive effect or on the basis of the public's interest in patent rights. *See Zeneca Ltd. v. Novopharm Ltd.,* 923 F.Supp. 74, 76 (D.Md.1995).

F.Supp. at 196. Judge Smalkin denied the summary judgment motion, refusing to give collateral estoppel effect to the vacated judgment. *Id.* The *Novopharm* case was then tried without a jury and on April 26, 1996, Judge Smalkin ruled orally that the '516 patent was valid and enforceable and that Novopharm, therefore, was liable for patent infringement. (# 77, Exh. 26) The district court judgment was affirmed on appeal by the Federal Circuit. *Zeneca Limited v. Novopharm Limited*, 111 F.3d 144 (nonprecedential opinion) 1997 WL 168318 (Fed.Cir.1997); (# 77, Exh. 27)

This factual recitation is sufficient to provide context for the parties' arguments, although the facts will be more fully elucidated as needed in the course of the legal discussion.

### III. The Summary Judgment Standard

When considering whether to grant summary judgment, the Court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the Court must "accept all reasonable inferences favorable to the nonmovant." *Int'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 205 (1 Cir.1996); *see also Lawton v. State Mut. Life Assurance Co. of America*, 101 F.3d 218, 222–23 (1 Cir.1996); *Borschow Hospital and Medical Supplies v. Cesar Castillo, Inc.*, 96 F.3d 10, 12 (1 Cir.1996); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1 Cir.1996); *One Nat'l Bank v. Antonellis*, 80 F.3d 606, 608 (1 Cir.1996).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine", the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.; see also Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1 Cir. 1997); *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1 Cir.1996); *Roche*, 81 F.3d at 253. In weighing whether a factual dispute is "material", the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Vinick v. Commissioner of Internal Revenue*, 110 F.3d 168, 171 (1 Cir.1997); *Sanchez*, 101 F.3d at 227; *Roche*, 81 F.3d at 253. "Thus the substantive law defines which facts are material." *Sanchez*, 101 F.3d at 227 (citing *Anderson*, 477 U.S. at 247–48).

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. *See Int'l Ass'n of Machinists and Aerospace Workers*, 103 F.3d at 205 (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1 Cir. 1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993) ("The core purpose of the summary judgment procedure is to 'pierce the boilerplate of the pleadings' and evaluate the proof to determine whether a trial will serve any useful purpose."). Rather, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### IV. Discussion

At the outset, Pharmachemie forthrightly concedes that under applicable

law[15] its affirmative defense of collateral estoppel must fail. More particularly, the First Circuit has held that "[a] vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case." *No East–West Highway Committee v. Chandler,* 767 F.2d 21, 24 (1 Cir.1985) (citations omitted). Zeneca is entitled to the entry of judgment in its favor on the defendant's Second Affirmative Defense of collateral estoppel.

■ Next to be addressed is the affirmative defense of patent misuse. Pharma-chemie takes the position that Zeneca has misused the '516 patent and, as a consequence, it is unenforceable. The plaintiff essentially argues that the concept or theory of patent misuse quite simply does not fit the facts of this case. Zeneca's point is well taken.

As explained by the Federal Circuit:

The patent misuse doctrine, born from the equitable doctrine of unclean hands, is a method of limiting abuse of patent rights separate from the antitrust laws. The key inquiry under this fact-intensive doctrine is whether, by imposing the condition, the patentee has "impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l Inc. v. AMF, Inc.,* 782 F.2d 995, 1001–02, 228 USPQ 562, 566 (Fed.Cir.1986); *see also Mallinckrodt [Inc. v. Medipart, Inc.],* 976 F.2d [700] at 704, 24 USPQ2d [1173] at 1176 [ (Fed.Cir.1992) ]. Two common examples of such impermissible broadening are using a patent which enjoys market power in the relevant market, see 35 U.S.C. § 271(d)(5) (1994), to restrain competition in an unpatented product or employing the patent beyond its 17–year term. In contrast, field of use restrictions (such as those at issue in the present case) are generally upheld, *see General Talking Pictures [Corp. v.*

*Western Elec. Co.],* 305 U.S. [124] at 127, 59 S.Ct. [116] at 117, 83 L.Ed. 81 [ (1938) ], and any anticompetitive effects they may cause are reviewed in accordance with the rule of reason. *See Mallinckrodt,* 976 F.2d at 708, 24 USPQ2d at 1179–80.

*B. Braun Medical, Inc. v. Abbott Laboratories,* 124 F.3d 1419, 1426–7 (Fed.Cir. 1997).

Even more recently the Federal Circuit reiterated that

The courts have identified certain specific practices as constituting per se patent misuse, including so-called "tying" arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good, *see, e.g., Morton Salt Co. [v. G.S. Suppiger Co.],* 314 U.S. [488] at 491, 62 S.Ct. [402] at 404, 86 L.Ed. 363, 52 USPQ 30, 33, and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties, *see, e.g., Brulotte v. Thys Co.,* 379 U.S. 29, 33, 85 S.Ct. 176, 179, 13 L.Ed.2d 99, 143 USPQ 264, 266 (1964). Congress, however, has established that other specific practices may not support a finding of patent misuse.

\* \* \* \* \* \*

When a practice alleged to constitute patent misuse is neither per se patent misuse nor specifically excluded from a misuse analysis by § 271(d), a court must determine if that practice is reasonably "within the patent grant, i.e., that it relates to subject matter within the scope of the patent claims." *Mallinckrodt, Inc. v. Medipart, Inc.,* 976 F.2d 700, 708, 24 USPQ2d 1173, 1179–80 (Fed.Cir.1992). If so, the practice does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse. *Id.,* 976 F.2d at 708, 24 USPQ2d at 1180. If, on

---

15. The Federal Circuit has determined that in matters not unique to patent law, the law of the pertinent circuit is controlling. *U.S. Phil-* *ips Corp. v. Sears Roebuck & Co.,* 55 F.3d 592, 596 n. 3 (Fed.Cir.1995).

the other hand, the practice has the effect of extending the patentee's statutory rights and does so with an anticompetitive effect, that practice must be analyzed in accordance with the "rule of reason." *Id.*

*Virginia Panel Corporation v. Mac Panel Company,* 133 F.3d 860 (Fed.Cir.1997) (citations omitted).

There is no argument advanced that the plaintiff somehow broadened the physical scope of the '516 patent. Rather, Pharmachemie focuses upon the purported expansion of its temporal scope. The defendant views the case in the following manner: (a) subsequent to Judge Broderick's findings that the '516 patent was invalid and unenforceable, Zeneca no longer had any patent rights, and (b) via the "collusive" settlement agreements with Barr and Heumann, Zeneca basically "revived" its rights and "bought" an extension of the '516 patent by ensuring the vacatur of the district court judgment by the Federal Circuit. It is in this sense that Pharmachemie contends that Zeneca has broadened the temporal scope of the '516 patent.

Pharmachemie's analysis would apply to every case that was settled while on appeal and the district court judgment of invalidity or unenforceability vacated under the former Federal Circuit procedure. As a matter of fact this is not a case where the plaintiff has in some manner extended its rights behind the normal seventeen year life of the '516 patent. *See, e.g., Brulotte v. Thys Company,* 379 U.S. 29, 32, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964) ("[W]e conclude that a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se.") As a matter of law, the practice alleged does not fall with the rubric of patent misuse.[16]

■ Prior to addressing the merits of the Third Affirmative Defense, i.e., that of unclean hands, it should be noted that in its dispositive motion Zeneca does not challenge Pharmachemie's First Affirmative Defense of inequitable conduct before the Patent Office. To the extent that the defendant is successful on its first affirmative defense, the '516 patent will have been found to be invalid or unenforceable and there would be no need to go further. If Zeneca's alleged misconduct in prosecuting the patent is not adequate to carry the day on the defense of inequitable conduct, neither would it suffice to prove unclean hands. In other words, something more would have to be shown to establish the third affirmative defense. Pharmachemie relies upon the conduct surrounding the Barr settlement as constituting the evidence of unclean hands.

Some sixty-five years ago, the Supreme Court wrote:

> [Courts of equity] apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.

*Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933). Instances where the invocation of the defense of unclean hands has been deemed meritorious are where a witness was paid to suppress evidence, *Keystone Driller,* 290 U.S. at 243; the patentee had knowledge of fraud, perjury and suppression of evidence before the Patent Office such that "[t]he history of the patents and contracts in issue is steeped in perjury and undisclosed knowledge of perjury", *Precision Instrument*

---

16. It is particularly telling that counsel for Pharmachemie conceded at oral argument that if Barr and Zeneca had struck this deal *before* Judge Broderick issued his decision, Pharmachemie would have no claim of patent misuse. *See* # 161 at pp. 88–89.

*Mfg. Co. v. Automotive Maintenance Machinery,* 324 U.S. 806, 816–7, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); and the patentee's "intentional concealment of the best mode and disclosure of a fictitious inoperable mode during the prosecution of the application" for the patent, *Consolidated Aluminum Corporation v. Foseco International Limited,* 910 F.2d 804, 809 (Fed.Cir. 1990).

None of the conduct of which Pharmachemie complains rises to a comparable level of unconscionablility. Zeneca paid money to Barr and licensed Barr to sell tamoxifen citrate in the United States in order to settle litigation with respect to the '516 patent and to obtain the vacatur of the unfavorable judgment of invalidity and unenforceability. These actions were consonant with the then accepted practice of the Federal Circuit. Zeneca also entered into a supply option agreement with Heumann; whether the plaintiff has chosen to exercise that option does not somehow implicate the true nature of the agreement. In short, none of this conduct is intrinsically wrong or inequitable as is bribery or perjury, and none of it is sufficient to raise a genuine issue of material fact as to whether the '516 patent is unenforceable due to unclean hands. Put another way, the facts of this case do not support the defense of unclean hands as a matter of law.

### V. Recommendation

For the reasons stated, I RECOMMEND that Plaintiff Zeneca's Motion For Partial Summary Judgment (# 73) be ALLOWED.

### VI. Review by the District Judge

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Clerk within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).